UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUIS DAVID PORTES DEL RIO, | : |
| Petitioner, | : Civ. No. 16-8721 (KM) |
| v. | : |
| CHARLES GREEN, | : OPINION |
| Respondent. | : |

**KEVIN MCNULTY, U.S.D.J.**

## I.   INTRODUCTION

The petitioner, Luis David Portes Del Rio, is an immigration detainee currently lodged at the Essex County Correctional Facility in Newark, New Jersey. He is proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking release from detention. The government filed a motion to dismiss the original habeas petition. Thereafter, petitioner filed an amended habeas petition. I agree with the government that the original habeas petition merited dismissal. The amended habeas petition, however, entitles the petitioner to relief, and this Court will order that a bond hearing take place before an Immigration Judge ("IJ").

## II.   BACKGROUND

Petitioner is a native of the Dominican Republic. He entered the United States in 1997. Petitioner claims he came to the United States to live with his paternal grandmother. Petitioner states that he is a naturalized United States citizen.

In 2015, petitioner was convicted in New Jersey of theft by unlawful taking, burglary, attempted burglary, and resisting arrest. On or about May 25, 2016, petitioner was placed into immigration detention based upon his conviction of two crimes involving moral turpitude.

Petitioner's immigration proceedings appear to be ongoing. The government states that a hearing before the IJ was scheduled for March 13, 2017, so that petitioner could present evidence that he was legally adopted by his grandmother and present any additional arguments regarding eligibility for cancellation of removal. (*See* Dkt. No. 7 at p.4) Thus, petitioner's citizenship is clearly at issue in his immigration proceedings. To date, neither party has updated this Court with an update on petitioner's immigration proceedings. On the record before me, I must find that petitioner is in pre-removal status. *See* 8 C.F.R. § 1241.1(c) (stating that an order of removal from an IJ becomes final "upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time"); *see also* 8 C.F.R. § 1241.1(a) (stating that an order of removal from an Immigration Judge becomes final "[u]pon dismissal of an appeal by the Board of Immigration Appeals").

As petitioner's immigration proceedings proceeded, he filed this federal habeas petition in November, 2016. In his original habeas petition, petitioner argues that he is entitled to be released from immigration detention because he is a United States citizen. Petitioner claims that this citizenship is derived from his paternal grandmother, who impliedly adopted him. The government filed motion to dismiss that original habeas petition in January, 2017. (*See* Dkt. No. 7) That response contains three main arguments. First, the government contends that this Court lacks jurisdiction to consider petitioner's claims of citizenship. Second, the government claims that even if this Court has jurisdiction to consider such claims, petitioner failed to exhaust administrative remedies. Finally, the government contends that petitioner's citizenship claim lacks merit.

On the same day that this Court received the government's motion to dismiss the original habeas petition, petitioner filed an amended habeas petition. That petition also challenges his

immigration detention, but not because of petitioner's claim of citizenship. Instead, the amended petition argues that the petitioner is entitled to a bond hearing because he has been detained for over ten months. On February 9, 2017, the government filed a response to the amended habeas petition. (*See* Dkt. No. 9) The government does not oppose the entry of an order that a bond hearing take place before an IJ.

On February 21, 2017, this Court received a reply brief from petitioner in support of his habeas petitions. In that brief, petitioner continues to allege that he is entitled to habeas relief in light of his purported United States citizenship. This brief makes it clear that the amended petition does not supersede the original petition: *i.e.*, petitioner has not abandoned his the claim based on U.S. citizenship he raised in his original habeas petition. I therefore discuss both petitions.

### III.  DISCUSSION

Petitioner's original and amended habeas petitions raise two separate arguments related to his continued immigration detention. In the original habeas petition, petitioner argues that he is entitled to be released from immigration detention because he is a United States citizen. In the amended habeas petition, petitioner argues that he is entitled to a bond hearing based upon the length of time he has already been in immigration detention, now over ten months.

A. U.S. Citizenship

Petitioner argues in his original habeas petition that he should be released from immigration detention because he is a United States citizen. He states that he is a United States citizen based upon the implied adoption of him by his grandmother, who is a U.S. citizen. (*See* Dkt. No. 1 at p. 4) The government contends that this Court lacks jurisdiction to consider this claim as it is inextricably tied to the question of petitioner's removability. Nevertheless, relying

3

on *Flores-Torres v. Mukasey*, 548 F.3d 708 (9th Cir. 2008), petitioner contends that this Court has jurisdiction to consider his claim.

In *Flores-Torres*, a petitioner filed a habeas corpus petition in the district court seeking his release from immigration detention, arguing (*inter alia*) that he was a United States citizen. *See id.* at 710. The district court determined that it lacked jurisdiction to consider petitioner's citizenship claim. *See id.* The issue before the Ninth Circuit was whether 8 U.S.C. § 1252 precluded the district court from exercising jurisdiction. Three subsections of section 1252 are relevant.

> Section 1252(a)(5) states as follows:
>
>> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5).

> Section 1252(b)(5) states as follows:
>
>> (A) Court determination if no issue of fact
>>     If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.
>>
>> (B) Transfer if issue of fact

4

> If the petitioner claims to be a national of the United
> States and the court of appeals finds that a genuine
> issue of material fact about the petitioner's
> nationality is presented, the court shall transfer the
> proceeding to the district court of the United States
> for the judicial district in which the petitioner
> resides for a new hearing on the nationality claim
> and a decision on that claim as if an action had been
> brought in the district court under section 2201 of
> Title 28.
> (C) Limitation on determination
> The petitioner may have such nationality claim
> decided only as provided in this paragraph.

8 U.S.C. § 1252(b)(5).

Finally, Section 1252(b)(9) states as follows:

> Judicial review of all questions of law and fact, including
> interpretation and application of constitutional and statutory
> provisions, arising from any action taken or proceeding brought to
> remove an alien from the United States under this subchapter shall
> be available only in judicial review of a final order under this
> section. Except as otherwise provided in this section, no court shall
> have jurisdiction, by habeas corpus under section 2241 of Title 28
> or any other habeas corpus provision, by section 1361 or 1651 of
> such title, or by any other provision of law (statutory or
> nonstatutory), to review such an order or such questions of law or
> fact.

8 U.S.C. § 1252(b)(9).

The Ninth Circuit in *Flores-Torres* determined that section 1252 did not preclude the district court from exercising jurisdiction over the habeas petition. The habeas petition, that Court held, did not challenge any final order of removal, but instead challenged the petitioner's detention prior to the issuance of any order. *See Flores-Torres*, 548 F.3d at 711. In so holding, the Ninth Circuit was guided by "the well-established principle that we require 'a particularly clear statement' of intent from Congress before we find habeas review foreclosed." *Flores-Torres*, 548 F.3d at 711 (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003); *I.N.S. v. St. Cyr*, 533 U.S. 289, 298-99 (2001)). Ultimately, the Ninth Circuit stated its holding as follows:

5

> Torres asserts that his detention is unlawful because he is a citizen-that he automatically derived citizenship from his mother under the former 8 U.S.C. § 1432 when he was seventeen because he was born out of wedlock and was not legitimated by his father. His claim is non-frivolous on its face. The government's authority to detain Torres appears to depend on the question of whether he was legitimated by his father under El Salvadoran law. The district court is the appropriate forum to resolve such a claim. We hold that Torres does not have to wait until his removal proceedings are completed and a final removal order is issued before he can secure habeas review of his citizenship claim and of his contention that he may not be detained under the INA.

*Flores-Torres*, 548 F.3d at 713.

As a Ninth Circuit decision, of course *Flores-Torres* is not controlling authority on this Court. Nevertheless, I consider it for its persuasive value. I note as well that a panel of the United States Court of Appeals for the Third Circuit (albeit in an unpublished decision) has cited to *Flores-Torres* approvingly. *See Olopade v. Att'y Gen. of United States*, 565 F. App'x 71, 73 (3d Cir. 2014) ("the [REAL ID] Act did not specifically preclude habeas review over claims of citizenship raised outside of the context of a challenge to a removal order.") (citing *Flores-Torres*, 548 F.3d 712 n.6).

*Flores-Torres* and *Olopade* persuade to consider, at least *arguendo,* that I am not barred from asserting jurisdiction over the petitioner's citizenship claim, at least insofar as it bears on his request to be released from detention, as opposed to the ultimate issue of removability. I consider, however, whether I should exercise such jurisdiction. The doctrine of prudential exhaustion suggests to me that I should not.

The Third Circuit has explained the doctrine of prudential exhaustion as follows:

> In cases where exhaustion is not required, we have held that the decision of whether to require exhaustion "is a matter of sound judicial discretion," which should "be guided by rationales advanced for the judicially created exhaustion doctrine." *Cerro Metal Products v. Marshall,* 620 F.2d 964, 970 (3d Cir. 1980). The rationales or purposes for requiring exhaustion are as follows: (1)

6

> "promot[ing] administrative efficiency by preventing premature interference with the agency processes"; (2) "respect[ing] executive autonomy by allowing an agency the opportunity to correct its own errors"; (3) "facilitat[ing] judicial review by affording courts the benefits of the agency's experience and expertise"; and (4) "serv[ing] judicial economy by having the agency or other tribunal, rather than the district court, compile a factual record." *Id.* (internal quotation marks omitted); *see Wilson v. MVM, Inc.,* 475 F.3d 166, 173 (3d Cir. 2007) ("[E]xhaustion of administrative remedies serves to promote administrative efficiency, respect executive autonomy by allowing an agency the opportunity to correct its own errors, provide courts with the benefit of an agency's expertise, and serve judicial economy by having the agency compile the factual record." (internal quotation marks and alterations omitted)).
>
> We have referred to judicially created exhaustion as prudential exhaustion and have explained that "[b]ecause of its nature, prudential exhaustion can be bypassed under certain circumstances, including waiver, estoppel, tolling or futility." *Wilson,* 475 F.3d at 174; *see also Facchiano v. U.S. Dep't of Labor,* 859 F.2d 1163, 1167–68 (3d Cir. 1988) (excusing exhaustion when (1) "the challenged agency action presents a clear and unambiguous violation of statutory or constitutional rights"; (2) "resort to administrative procedures is clearly shown to be inadequate to prevent irreparable injury"; and (3) requiring exhaustion is "futile"). "However, merely because exhaustion requirements are prudential does not mean that they are without teeth. Even prudential exhaustion requirements will only be excused in a narrow set of circumstances." *Wilson,* 475 F.3d at 175. In particular, "[i]n order to invoke the futility exception to exhaustion, a party must 'provide a clear showing' of futility before the District Court." *Id.* (quoting *D'Amico v. CBS Corp.,* 297 F.3d 287, 293 (3d Cir.2002)).

*N. Michigan Hosps., Inc. v. Health Net Fed. Servs., LLC*, 344 F. App'x 731, 738 (3d Cir. 2009).

In this case, requiring petitioner to exhaust his claims of citizenship first before the IJ and, if he loses, before the BIA, would prevent premature interference with the agency process, allow the agency to correct any errors if they are made directly, facilitate judicial review by having the citizenship issue decided by the agency with the expertise and experience into the

issues, and promote judicial economy. Furthermore, I do not find that any of the exceptions of prudential exhaustion listed above apply.

"Prudential exhaustion 'is generally judicially created.'" *Metropolitan Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007) (quoting *Wilson*, 475 F.3d at 174). It permits a district court to refrain from exercising jurisdiction in a limited class of cases. For the reasons stated above, I believe that this is such a case. At least one district court within the Ninth Circuit (where *Flores-Torres* is controlling) has so held. *See Pianka v. De Rosa*, No. 14-2179, 2016 WL 7383333 (D. Ariz. Oct. 13, 2016), *report and recommendation adopted*, 2016 WL 73720909 (D. Ariz. Dec. 20, 2016). Discussing *Flores-Torres*, the District of Arizona stated as follows:

> *Flores-Torres* does not require the Court to exercise jurisdiction over Petitioner's claim—the Court can exercise its discretion to decline jurisdiction and require prudential exhaustion before reaching the merits. *See, e.g., Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007); *Tapia v. DeRosa*, 2013 WL 6512489 (D. Ariz. Dec. 11, 2013) (dismissing petitioner's writ of habeas corpus under the doctrine of prudential exhaustion); *Derboghossian v. DeRosa*, 2015 WL 403916 (D. Ariz. Jan. 29, 2015) (discussing prudential exhaustion and denying petitioner's habeas petition on that basis that petitioner did not meet the statutory requirements for citizenship). Courts may require prudential exhaustion if "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga*, 488 F.3d at 815 (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)).
>
> Considering the above criteria, the Court finds that Petitioner should be required to exhaust his administrative remedies before seeking habeas relief. Here, Petitioner's citizenship claim is directly intertwined with his removal proceedings. According to the record, Petitioner has had hearings on his claim to citizenship before the IJ, who has previously issued an "exhaustive written decision after reviewing nearly 50 exhibits," and, most recently, the removal proceedings are still pending before the BIA. Notably, Petitioner is represented by counsel in the administrative

>proceedings, whereas he is unrepresented in the instant matter. This court would not be an adequate substitute for the expertise of the administrative agency in reviewing Petitioner's claim to citizenship.
>
>Furthermore, if the BIA were to affirm the IJ's ruling, Petitioner could then file a petition for review in the Ninth Circuit Court of Appeals. If that court found genuine issues of material fact about Petitioner's nationality, it would then refer the case to the district court for a new hearing on the nationality claim. *See* 8 U.S.C. § 1252(b)(5)(B). Thus, Petitioner will not be deprived of due process.
>
>Additionally, relaxing the requirement of administrative exhaustion would encourage the deliberate bypass of the administrative scheme, in that anyone with a citizenship claim could proceed directly to federal court in a habeas corpus proceeding without any administrative review of the claim. Yet, requiring administrative exhaustion would allow the agency to correct any potential mistakes on its own, thereby precluding the need for judicial review.

*Pianka*, 2016 WL 7383333, at *2–3.

Assuming that the jurisdictional holding of *Flores-Torres* applies, I nevertheless withhold consideration based on the prudential standing doctrine, essentially for the reasons stated in *Pianka*. To those reasons, I add one more. If I were to consider the citizenship claim, I could do so only in connection with the petitioner's claim for release from detention—even under *Flores-Torres,* I have no jurisdiction to consider the citizenship claim in connection with the ultimate issue of removability. To consider it, then, would segment the issue awkwardly, inserting the court at a phase where the agency should be applying its expertise in matters of citizenship. More importantly, as to issue of release from detention, the petitioner has a far more direct avenue of relief: a bond hearing before the IJ. He has sought that relief in his amended petition, and the government does not oppose it.

Therefore, the government's motion to dismiss the original habeas petition will be granted, without prejudice, based on prudential exhaustion, and I will proceed to consider the petitioner's request for a bond hearing.

B. <u>Bond Hearing based on Length of Detention</u>

In his amended habeas petition, petitioner contests his current immigration detention based on its protracted length, currently about ten months. The Attorney General has the authority to detain aliens in removal proceedings before the issuance of a final order of removal. This period of detention is known as the "pre-removal" period. Detention of an alien in the pre-removal period is governed by Section 1226 of Title 8 of the United States Code. Section 1226(a) permits the Attorney General to detain or release an alien pending a decision on whether the alien is to be removed from the United States:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General;
> (B) conditional parole; ...

8 U.S.C. § 1226(a). "Except as provided in subsection (c)" is included because, under Section 1226(c), certain criminal aliens are subject to mandatory pre-removal detention:

> The Attorney General shall take into custody any alien who—
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(a)(ii), (A)(iii), (B), (C), or (D) of this title,
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or

10

> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
> when the alien is released, without regard to whether the alien is release on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1).

In *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011), the United States Court of Appeals for the Third Circuit established a framework for analyzing the permissibility of pre-removal detention:

> [Title 8, United States Code, Section] 1226(c) contains an implicit limitation on reasonableness: the statute authorizes only mandatory detention that is reasonable in length. After that, § 1226(c) yields to the constitutional requirement that there be a further, individualized, inquiry into whether continued detention is necessary to carry out the statute's purpose.... Should the length of [an alien's] detention become unreasonable, the Government must justify its continued authority to detain him at a hearing at which it bears the burden of proof.

656 F.3d at 235. *Diop* did not state a specific length of pre-removal-order detention beyond which a petitioner would be entitled to a bond hearing. *See id.* at 234; *see also Carter v. Aviles,* No. 13–3607, 2014 WL 348257, at *3 (D.N.J. Jan. 30, 2014) ("[T]he Third Circuit has not set a 'universal point' when mandatory detention under § 1226(c) is unreasonable.") (citing *Leslie v. Attorney Gen.*, 678 F.3d 265, 270–71 (3d Cir.2012)); *Barcelona v. Napolitano,* No. 12–7494, 2013 WL 6188478, at *1 (D.N.J. Nov. 26, 2013) ("The Court of Appeals in *Diop* declined to adopt a rule that a hearing was required after a certain fixed amount of time in pre-removal detention.") (citation omitted). Instead, the Third Circuit noted that "[r]easonableness, by its very nature, is a fact-dependent inquiry requiring an assessment of all of the circumstances of a particular case." *Diop,* 656 F.3d at 234. A reasonableness determination "must take into account a given individual detainee's need for more or less time, as well as the exigencies of a particular

case." *Id.* However, "'the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [certain] thresholds.'" *Chavez–Alvarez v. Warden York Cnty. Prison,* 783 F.3d 469, 474 (3d Cir. 2015) (quoting *Diop,* 656 F.3d at 232, 234). Indeed, in *Chavez–Alvarez,* the Third Circuit noted with respect to the circumstances of that particular case that sometime after six months, and certainly within a year, the burden to the petitioner's liberties would outweigh any justification to detain the petitioner without a bond hearing. *See id.* at 478. A petitioner's bad faith, too, has at least the potential to influence the determination of whether a bond hearing should be ordered. *See Chavez-Alvarez,* 783 F.3d at 476 ("Because we conclude that Chavez-Alvarez did not act in bad faith, we do not need to decide here whether an alien's delay tactics should preclude a bond hearing."). In the pre-removal context under *Diop* and *Chavez-Alvarez,* the proper relief is to order a bond hearing before the Immigration Judge, not to order the petitioner released from immigration detention. *See Morrison v. Elwood,* No. 12-4649, 2013 WL 323340, at *1 (D.N.J. Jan. 28, 2013) ("This Court's power to entertain habeas applications ensues from the narrowly-tailored mandate of 28 U.S.C. § 2241, which – with respect to the claims raised by pre-removal order alien detainee's – allows relief limited to a directive of a bond hearing.") (citing *Diop,* 656 F.3d 221).

In this case, petitioner has been detained pursuant to § 1226(c) for over ten months. The government concedes at this point that it would be appropriate for this Court to order that a bond hearing be held by an IJ in accord with *Chavez-Alvarez*. In light of the length of time petitioner has been in immigration detention, the lack of any evidence of bad faith on petitioner's part, and the government's consent, this Court will grant the habeas petition on this issue and direct that an IJ conduct a bond hearing within 14 days.

## IV. CONCLUSION

For the foregoing reasons, respondent's motion to dismiss the original habeas petition will be granted due to lack of exhaustion. However, petitioner's claim in his amended habeas petition that he is entitled to a bond hearing before an IJ pursuant to *Diop* and *Chavez-Alvarez* is granted. An appropriate order will be entered.

DATED: April 4, 2017

KEVIN MCNULTY
United States District Judge